Good morning, Your Honors. May it please the Court, my name is Jennifer Alisio and I'm here representing the petitioner, Mrs. Margaret Hakopian. Mrs. Hakopian is a 68-year-old citizen of Iran who fled the country in 2002 following years of harassment that came to a head in late 2001 when she was detained, beaten, and interrogated for a period of four months by the Iranian authorities on account of her Christian faith and proselytizing to Muslims. The immigration judge's finding of non-credibility in Mrs. Hakopian's case was not supported by substantial evidence as required by this Court in Guivi I.N.S. In addition, Mrs. Hakopian's request for relief under asylum, the Convention Against Torture, and withholding of removal were compelling, supported by ample country condition report evidence, and should have been granted. The immigration judge gave four bases for his finding of non-credibility. First, the inclusion in Mrs. Hakopian's hearing testimony of one minor arrest that was not specifically Mrs. Alisio, would you just slow down a little bit? Oh, I'm sorry, yes. I think you'll be probably more effective that way. Sure. Sorry. The first point, the immigration judge's first point, was the inclusion in Mrs. Hakopian's hearing testimony of one minor arrest that was not specifically described in her asylum application, even though her application and testimony both included references to a consistent pattern of altercations with the authorities. Second, a series of immaterial inconsistencies in dates. Third, the immigration judge found statements concerning Mrs. Hakopian's fear for her life after she was released from detention, quote, implausible, despite ample country condition report evidence. And fourth, the I.J. based his finding on what he perceived to be the then 63-year-old Mrs. Hakopian's, quote, disruptiveness and evasiveness in her career. I think the principal factual issues that you should address is whether or not the immigration judge had substantial evidence to find that she was inconsistent. Inconsistency is the basis of lack of credibility. Inconsistent when she said she was briefly detained by Iranian police, I guess they are, called Pasdars in February 2001, and her oral testimony that she was caught by the Pasdars, put in a car and driven to jail 30 minutes away, interrogated and kept in jail for a day or night. The two seem to be somewhat inconsistent except for the date. In other words, one is a brief detention and release, and the other is an arrest, drive to jail, overnight stay. The two stories don't match. What's wrong with that as far as substantial evidence for the adverse credibility finding? Well, Your Honor, I would respond to that in two ways. First, I would point out that Mrs. Hakopian was entirely consistent on the major part of her asylum claim, which is this four-month detention interrogation. Kennedy. Counsel, let's be on the same line. Absolutely. As an appellate court, we review the cases. We do not retry them. Yes, sir. All we look for is whether there is substantial evidence on one of any of the grounds which the immigration judge found adverse credibility finding. If there's one, we are, under Ninth Circuit court law, bound to affirm. So don't try to argue me into a weight of evidence finding, because that would be fruitless. Okay. Well, to address your point more directly, Your Honor, Mrs. Hakopian, in her asylum application, stated, quote, many times, many times, I have been stopped on the street and have been searched and harassed by the government authorities of Iran. She also stated the same thing in her hearing testimony, and that's in the record at 108 to 109. So, Your Honor, it is, in fact, consistent with her statements that she had been consistently harassed by the Iranian authorities. So that arrest is consistent with those statements, and those were stated both in the asylum application and in her hearing testimony. So the immigration judge sort of incorrectly characterized that arrest as an essential pillar of her claim that wasn't brought up in the asylum application, when, in fact, she had consistently harassed her. So she was incorrect in characterizing her testimony that she was detained by pass guards and quickly escaped. Has she never really said that? No, Your Honor. What I'm saying is that the immigration judge was incorrect in characterizing it as something that had never been mentioned in any context before. So in this case, what she had said in her asylum application, what we're looking at is a case of the general and the specific. So she had referred generally in her asylum application to a consistent pattern of harassment that this arrest is directly in line with, and then had specifically described in greater detail the four-month detention and interrogation. So what I'm contending is not that the immigration judge was incorrect in saying that she made this statement, but what I'm saying is what he was incorrect about was that it hadn't been discussed before. It had been discussed before, just generally, and she was merely adding more detail to that discussion. So go ahead. Pardon me. Isn't it correct that the application form was filled out for her by someone who spoke English? Yes, Your Honor. It was filled out for her by her cousin who spoke English, and she did not speak English at that time. So, Your Honor, we are also contending that the immigration judge did not review her application with the requisite charity that this Court required under Smolniakova v. Gonzales. Why is her application not untimely? Well, Your Honor, in this case, we believe that the Court has jurisdiction to review or to answer your first question. The application is not untimely because she stated she entered the country in February or, I'm sorry, April 29th of 2002. She filed her application in July, July 12th of 2002. And, Your Honor, she stated that in her asylum application. She stated that again – I'm sorry. The government stated that again when it issued her a notice to appear after the denial of her administrative filing. And moreover, the immigration judge, when he denied her request for voluntary departure, stated that Ms. Ecopian was, quote, served a copy of the notice to appear within one year of her entry to the United States. So it seems, Your Honor, that the – all of the evidence clearly points to the fact that she was indeed – there was indeed a timely filing. And so we believe that that – What was that issue counsels, Judge Gould? Was the issue of the timeliness raised in the opening brief of Petitioner? No. No, Your Honor. We filed a supplemental brief on the issue of timeliness and then responded this morning to government counsel's 28-J letter that was submitted, I believe, to this Court on Friday. So – We have a general rule about not considering issues not raised in the opening brief, you know, with some exceptions to that. How do you view that issue? Well, Your Honor, we believe that we preserved it by filing the supplemental brief prior to the government's response and assumes that – well, we believe that we preserved the issue, Your Honor. By the way, if you wish to keep any time for rebuttal, you should let us know. Sure. Well, then, may I briefly conclude, and I will reserve the remainder of my time for rebuttal? Thanks. Two minutes. A full consideration of the record shows that each of the bases relied upon by the immigration judge were not supported by substantial evidence and, therefore, cannot form the basis of a proper finding of noncredibility. We ask that since substantial evidence does not support a negative credibility finding, that this Court reverse the IJA's decision and remand it to the BIA for further  Thank you, Your Honor. Thank you very much. Good morning, judges. Judge, may it please the Court, my name is Elise Alley-Schmierny, and I represent the government of the United States of America. There's one issue that's properly before this Court, and that is whether the record credibly established her withholding of removal and CAT claims. Now, as Judge Bea noted, the inconsistency between Petitioner's declaration, which was filed in time closer to the events that happened to her in Iran, and her testimony were inconsistent. Specifically, Ms. Hakobian declared that in 2001, sometime generally, she had been stopped on the street for passing out of her declaration. It wasn't described as February, but it was, it said, generally 2001. She had been stopped on the street for passing out biblical verses translated into Farsi. In her declaration, it was explained that she was able, somehow, fortuitously to escape. She then went on to describe her very next incident, which was the August 2001 detention and resulting four-month allegation of abuse and torture. Does the application say that was the very next incident? Yes. It says, in describing the incidents in line, it went from sometime 2001 to August 2001. That's a sequence in which they were listed, but does the application say that was the very next incident? No. I'm sorry. And did she not also say, or whoever filled that out for her, that she had been harassed many times? Absolutely. But her testimony was inconsistent. If you say you've been harassed many times, then to talk more about one of them when you appear for the hearing. Why is that inconsistent? The issue here was that in her testimony, when she first was being asked by her own attorney, she testified as to a February 2001 incident. Her very — when asked what the next incident was by her own attorney, she went to August 2001. It was only once her attorney realized, after the explanation of the entire August 2001 experience, that her attorney realized that her declaration and her testimony was inconsistent. In an effort to clarify that for the immigration judge, at that point, her attorney pointed out that there was this inconsistency, and Petitioner suddenly announced that there were two incidents in February 2001. That's highly suspect and substantial. Those are the two incidents that she relies on as being the impetus for her fleeing Iran. Let me ask you this. I believe that the I.J. said that the incident where she was packed off in the car and kept overnight was central to her claim. And yet, she also has a claim that doesn't appear to be disputed, that she was incarcerated for four months and beaten. Isn't that the part that's really central to her claim? Sorry for interrupting you. I would have two statements to that. First, the immigration judge was frustrated and perplexed by Petitioner's inability to responsibly answer any of the questions. Specifically, specifically to tell me how, insofar as she was unable to respond to any of the questions, and the immigration judge continually had to interrupt her to explain the procedures of the courtroom, he stopped the Department of Homeland Security's cross-examination on that number, on the August 2001 incident. So the fact that he wasn't able to show inconsistencies between testimony of August 2001 and her declaration of 2001 in her regular testimony versus cross-examination really more shows that the immigration judge cut short the cross-examination of that issue. That being said, the evasiveness and confusion and frustration that came out was not just a 63-year-old woman's confusion that occurs in a courtroom in a foreign land and that sort of thing. In my tenure at the Department of Justice in the Office of Immigration Litigation, I have never seen an immigration judge continually stop proceedings because a petitioner has, or an alien has, consistently answered the question before it has been translated. Both her attorney and the immigration judge stopped her and asked her to please let not only the question stop being to complete the question from either the immigration judge or her own attorney, but for it to be translated. The immigration judge was increasingly confused as to whether Ms. Hacopian spoke English, and it was highly suspect for the immigration judge. And he stopped proceedings twice to note for the record that that was going on. So he felt that further testimony on the August 2001 incident was not going to be useful for the court because she was not answering the questions. But is it fair to describe that as evasive, or would it be more accurate to describe it as anxious? Yes and no. Anxious behavior happens obviously in this setting. The immigration judge is the best individual in front of the facts and in front of the individual to find out what's going on and has the context to understand what's going on. He was there in the courtroom with her that is a luxury that you and I respectfully do not have. And it was his determination, judging by watching her, that it was evasive. And the record substantially establishes that. I don't think there's anything in the record where he explains what he thought was evasive. He just concluded it was evasive. And so when we look at the record, I think we have to see something there that sounds evasive as opposed to overeager. Respectfully, I understand your point. And when looking at the record, two independent conclusions in this court at the Ninth Circuit does not mean that the immigration judge, that this court needs to find that the immigration judge was wrong. Two inconsistent findings with respect to that exact finding still gives deference to the immigration judge's position. Well, I agree we have to give him deference. I just am a little troubled by what I could find in the record to support what he said. Maybe a review of other of the inconsistencies might help with that. Not only was the February 2001 incident different, she also had a witness come and speak. And the immigration judge didn't conclude this, but it's fairly recognizable in the record that the witness was fabricating an answer that she wished the immigration judge to note. When asked, I'm sorry, Ms. Kamali was the witness. Ms. Kamali was asked as to the incident that occurred to Petitioner back in Iran. Ms. Kamali, remember, had left 14 or 15 years prior to Ms. Hakopian's leaving and re-met her at the church in Glendale, California. When asked as to any knowledge as to what had happened to Ms. Hakopian, Ms. Kamali testified that she had, in fact, heard that Petitioner had been caught. And had been detained. When asked when that happened, Ms. Kamali came up with 14 to 15 years ago. And that the detention had, again, lasted four months. So again, we have this issue of February, two incidents is happening. At one point, she was arrested and detained for one day and one night. The other time, she was able to escape. And again, we have inconsistent testimony from both witnesses. The Petitioner herself, who explains that it had happened. Yes, Judge Gould? Yeah, counsel, could you address the question I raised earlier about whether the asylum appeal, the timeliness, that is before us properly if it wasn't in the opening brief. Is the supplemental brief okay to bring that to us? We would- Or is that, is that out under our presence? We would, again, argue that it was not raised and therefore waived in the asylum, in the initial application. And again, Petitioner had two bites at the apple in this instance in- But wait a minute. Let's go back to your notice to appear, right? Right. The second item in your notice to appear is an allegation by the government that Ms. Hacopian arrived in the United States on April 29th, 2002. It's an allegation in a signed pleading of the United States government. What issue is there when you allege it? She doesn't have to deny it. She can admit it. There's no issue of fact upon which evidence can be introduced if there's an admission by the pleader in the notice to appear. We would, we would argue that the immigration officer at that, at that point simply took the date off of the asylum application. He took, he took it off for good and sufficient reason or for no reason. But the fact of the matter is that you alleged that she came in on April 29th. And on the back of the form, if you read it, it says, read this very carefully. And if you have any contrary evidence, be sure to raise it. She had no contrary evidence. You were alleging timeliness. Doesn't that just end the issue right there? I would, I see that my time is up. I would like to respond to you, if that's okay. Okay. I would argue, the government would argue that there is no jurisdiction with regard to that specific issue. Because there is, I understand what you're saying. That there is an allegation of fact by my, my side. And that for, therefore, that should take the issue off the table. We would argue that that's not a finding of fact, in that it was not an immigration judge's- Of course it's not a finding of fact because you didn't tender the fact issue. It's also not a finding of fact that you represent the United States of America. Absolutely. There are certain things which just aren't findings, aren't issues of fact. And that's one of them. I'm sorry. Your time is up. Thank you. Your Honor, I would like to briefly address just three points that were made by counsel for the government. Don't spend too much time on timeliness. Yes, Your Honor. The first that I would like to address is that counsel, again, repeated the immigration judge's incorrect statement that the second incident, I'm sorry, the February 2001 incident was the precipitating event that caused Mississippi to leave. I want to underline that it was not the precipitating event. The precipitating event was the August 2001 four-month detention. The second thing that I'd like to point out is the omni issue of evasiveness. If the immigration judge thought that there were particular instances of evasiveness, the immigration judge was obligated to point those out specifically, according to this Court's decision in Garovilles. And the immigration judge pointed out only one specific instance. He pointed to the record at page 163, which I won't recount in full here for you, but it's an instance in which the questions come fairly quickly and are answered very responsibly. So that particular example does not bear out the claim of evasiveness in the record. And the final point that I'd like to make is the immigration judge does not refer to or suggest in his decision that Mrs. Hakobian's witness, Ms. Kamali, fabricated. He does point out some inconsistencies in dates. However, those are immaterial inconsistencies in dates and cannot be used to support a finding of noncredibility. Well, didn't Kamali say that she first met the Petitioner in Iran in 1980? Yes, Your Honor. And then it turned out that she hadn't met her there? I don't believe that's in the record, Your Honor. She does say that she met the Petitioner in Iran in the 80s, but there's nothing to contradict that in the record. And the incident that was testified to by the Petitioner took place in 2001. No, Your Honor. The Petitioner – I'm sorry – testified that she saw her again in 2001. And when she came to the United States, she had known her from Iran earlier. Okay. So she first saw her in 2001 in the United States, but had known her in Iran. And I have nothing further, Your Honor, unless you have questions. Thank you very much. Thank you. As acting presiding judge, I'll declare this matter submitted. And we thank both attorneys for very good arguments. Thank you.
judges: Gould, Bea, Sedwick